Whitehall v Andrade (2024 NY Slip Op 05238)

Whitehall v Andrade

2024 NY Slip Op 05238

Decided on October 23, 2024

Appellate Division, Second Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided on October 23, 2024
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Second Judicial Department

VALERIE BRATHWAITE NELSON, J.P.
JOSEPH J. MALTESE
LINDA CHRISTOPHER
LAURENCE L. LOVE, JJ.

2019-03319
 (Index No. 703668/15)

[*1]Renee Whitehall, appellant, 
v
Javier E. Andrade, etc., et al., defendants, Mercy Medical Center, respondent.

Duffy & Duffy, PLLC (Pollack, Pollack, Isaac & DeCicco, LLP, New York, NY [Brian J. Isaac], of counsel), for appellant.
Montfort, Healy, McGuire & Salley LLP (Mauro Lilling Naparty LLP, Woodbury, NY [Caryn L. Lilling and Katherine Herr Solomon], of counsel), for respondent.

DECISION & ORDER
In an action, inter alia, to recover damages for medical malpractice, the plaintiff appeals from a judgment of the Supreme Court, Queens County (Joseph J. Esposito, J.), entered January 16, 2019. The judgment, insofar as appealed from, upon the granting of the motion of the defendant Mercy Medical Center pursuant to CPLR 4401, made at the close of the plaintiff's case, for judgment as a matter of law dismissing the complaint insofar as asserted against it, is in favor of the defendant Mercy Medical Center and against the plaintiff dismissing the complaint insofar as asserted against that defendant.
ORDERED that the judgment is affirmed insofar as appealed from, with costs.
On April 15, 2012, the plaintiff was transferred to the defendant Mercy Medical Center (hereinafter Mercy) under the care of the defendant Javier E. Andrade. Upon first examining the plaintiff sometime between 11:00 p.m. and 11:30 p.m., Andrade determined that the plaintiff required surgery, but that she was stable and surgery could wait until the following morning. Andrade elected to stay at Mercy overnight so that should the plaintiff's condition change, he was available to modify the treatment plan. Andrade instructed Mercy's staff to notify him if there was a change in the plaintiff's condition. At approximately 1:00 a.m., the plaintiff's blood pressure dropped significantly. Andrade was not notified of the plaintiff's change in condition. Two hours later, at 3:00 a.m., the plaintiff's blood pressure dropped again and her heart rate rose to more than 130. For the first time that morning, a Mercy staff member notified Andrade that the plaintiff's condition had changed. Upon examining the plaintiff, Andrade determined that the plaintiff was in septic shock and that she required emergency surgery. Andrade commenced surgery at 6:00 a.m.
After surgery, the plaintiff was placed in the intensive care unit where she went into cardiac arrest twice. The plaintiff required arterial and central lines to monitor her heart. Subsequently, a blood clot developed in the plaintiff's right leg. Due to her critical condition, it was determined that the plaintiff could not undergo surgery to remove the blood clot, and instead her right leg was amputated above the knee.
In 2014, the plaintiff commenced this action against, among others, Mercy, inter alia, [*2]to recover damages for medical malpractice relating to the amputation of her right leg. The matter proceeded to a jury trial. At the close of the plaintiff's case, Mercy moved pursuant to CPLR 4401 for judgment as a matter of law dismissing the complaint insofar as asserted against it. The Supreme Court granted the motion, and a judgment was entered, among other things, in favor of Mercy and against the plaintiff dismissing the complaint insofar as asserted against Mercy. The plaintiff appeals.
CPLR 4401 provides that any party may move for judgment as a matter of law after the close of the evidence presented by an opposing party. To be entitled to judgment as a matter of law pursuant to CPLR 4401, "a defendant must show that, upon viewing the evidence in the light most favorable to the plaintiff, there is no rational basis by which the jury could find for the plaintiff against the moving defendant" (Stewart v Heralall, 116 AD3d 760, 760; see Promenade Nursing Home, Inc. v City of New York, 191 AD3d 1025, 1025-1026). "In determining whether the defendant has met this burden, a court must accept the plaintiff's evidence as true and accord the plaintiff the benefit of every favorable inference which can reasonably be drawn from the evidence presented at trial" (Feteha v Scheinman, 169 AD3d 871, 872; see Tapia v Dattco, Inc., 32 AD3d 842, 844).
To establish a prima facie case of medical malpractice, a plaintiff must prove "(1) the standard of care in the locality where the treatment occurred, (2) that the defendant[s] breached that standard of care, and (3) that the breach of the standard was the proximate cause of injury" (Pieter v Polin, 148 AD3d 1193, 1194 [internal quotation marks omitted]; see Hudler v Reddy, 226 AD3d 654, 655). To establish proximate causation in a medical malpractice case, a plaintiff must present sufficient medical evidence from which "a reasonable person might conclude that it was more probable than not that the defendant's departure was a substantial factor in causing the plaintiff's injury" (Brown v Shah, 109 AD3d 948, 949 [internal quotation marks omitted]; see Speciale v Achari, 29 AD3d 674, 674). A finding of liability is not appropriate where, to establish a connection between a defendant's alleged departures and the plaintiff's injuries, the jury could only rely on speculation (see Berger v Shen, 185 AD3d 539, 542; Brown v Shah, 109 AD3d at 949). Generally, expert testimony is necessary to prove a deviation from accepted standards of medical care and to establish proximate cause (see Hudler v Reddy, 226 AD3d at 656; Navarro v Ortiz, 203 AD3d 834, 835).
Here, the plaintiff's expert testified that Mercy staff departed from good and accepted medical practice by failing to notify Andrade of the plaintiff's change in condition at 1:00 a.m. However, there was no valid line of reasoning or permissible inferences which could possibly lead rational persons to the conclusion that such a departure was a substantial factor in causing the plaintiff's injuries. Although the plaintiff's expert opined that Mercy should have notified Andrade of the plaintiff's change in condition at 1:00 a.m., the plaintiff's expert did not testify that Mercy's failure to notify Andrade of the plaintiff's change in condition at 1:00 a.m. was causally related to the plaintiff's leg amputation. Moreover, no evidence was presented at trial that had Andrade been timely notified of the plaintiff's change in condition, he would have decided to perform surgery at that time, or that surgery could have been commenced in time to prevent the plaintiff from losing her leg. Thus, to establish a connection between Mercy's alleged departure and the plaintiff's injuries, the jury could have relied only on speculation (see Berger v Shen, 185 AD3d at 542; Brown v Shah, 109 AD3d at 949).
The parties' remaining contentions are either without merit or unpreserved for appellate review.
BRATHWAITE NELSON, J.P., MALTESE, CHRISTOPHER and LOVE, JJ., concur.
ENTER:
Darrell M. Joseph
Clerk of the Court